ABRAHAM V. VAN FLEET, JOHN T. BIRD, HENRY C. PITNEY
AND ROBERT S. GREEN, VICE-CHANCELLORS.

---

ARNOLD LEO

*v.*

ASHBEL GREEN, receiver of the North River Construction
Company.

A person having a claim, which does not appear to be valid and meritorious, against an insolvent corporation in the hands of a receiver appointed by this court, will not be permitted to present it to the receiver for his consideration and action after the time limited by order of the court for such presenta-

tion has expired, and especially is this so when it appears that the failure to present the claim in due time was not the consequence of misapprehension or want of actual notice, but the result of careless indifference or of intentional delay.

On petition for leave to appeal from receiver's disallowance of claim.

Mr. *David A. Storer*, for the petitioner.

Mr. *John P. Stockton*, for the receiver.

THE CHANCELLOR.

The North River Construction Company, a corporation of this state, was adjudged by this court, in January, 1884, to be insolvent, and, in pursuance of the statute, Ashbel Green was appointed its receiver. On the 11th of March, in the same year, the chancellor ordered that all creditors of the company should present their claims to the receiver within four months from that date, proving the same to the receiver's satisfaction, and, in default of such presentation and proof, should be barred from participating in any dividends from the assets of the company, and prescribed the notice which should be given of the order. The notice was duly given.

On the 7th of September, 1885, nearly fourteen months after the time limited for the presentation of claims had expired, the petitioner, Arnold Leo, presented a demand for $12,500, with interest from July 1st, 1881, characterizing it "money paid and advanced by me to the North River Construction Company." The receiver was not able to trace such an indebtedness of the company upon its books, and he therefore immediately returned Mr. Leo's paper with the written objections that it was not presented within due time and that its form did not sufficiently apprise him of its merits. He also notified Mr. Leo that the claim was disputed and rejected by him to the end that appeal might be taken to the chancellor.

On the 20th of July, 1888, the chancellor made a further order that all persons who had presented to the receiver claims,

Leo *v.* Green.

which the receiver had disallowed, should prosecute any appeal they might desire to take and bring the same to hearing before the first Monday in December of that year.

Notice of this order was given to the attorney of Mr. Leo in August and to Mr. Leo himself in September, of the same year.

No action was taken by Mr. Leo until December, 1891, when he called upon the receiver with reference to the claim, and was then explicitly informed as to the nature and effect of the orders and notices which have been above referred to.   Thereafter, Mr. Leo did nothing until the latter part of September, 1893, when, as the receiver was about to make final distribution of the remnant of the assets of the company then in his hands among its stockholders, he caused a new attorney to serve a notification that he, Leo, intended to prosecute his claim, and that any distribution which would strip the receiver of funds to meet his recovery would be made at the receiver's peril.   Later, in October, 1893, the present petition was presented to the chancellor. The receiver has answered it, and the application of Mr. Leo is now heard upon the petition, answer, affidavits filed on each side and the record in the insolvency matter.

The answer exhibits the further facts that Arnold Leo & Company, a partnership, of which the petitioner is a member, was the owner of six hundred shares of the capital stock of the North River Construction Company, and, as such stockholder, was known to and recognized by the receiver.   To this firm, as one of his *cestuis que trustent,* the receiver from time to time made reports of his progress in the administration of his trust.   On the 12th of January, 1885, and the 11th of January, 1886, he sent it reports which referred to the order to limit the presentation of claims of creditors.   On March 15th, 1886, he sent it a report which specially stated that he rejected the claim of Arnold Leo, and that no action upon the rejection had been taken by Mr. Leo.   On June 3d, 1888, he reported that he intended to ask the chancellor to limit the time within which creditors should appeal from his disallowance of their claims, and in a report dated December 6th, 1888, the order to limit appeals was copied at length.

It further is made to appear that the North River Construction Company was organized for the purpose of constructing the New York, West Shore and Buffalo Railway Company from Weehawken, in this state, to the city of Buffalo, a distance of four hundred and twenty-five miles, for which it was to be paid by the capital stock and bonds of that company; that its failure was caused by depreciation in the market value of those securities; that at the time of its failure it had two hundred thousand three hundred and fifty shares of the capital stock of the railway company and also first mortgage bonds of that company of the par value of $10,000,000 and demand notes of the company for $600,000, all of which went to the receiver and constituted the principal part of the assets in his hands; that in June, 1884, a suit was commenced to foreclose the first mortgage upon the railway company's property, which threatened the destruction of the principal assets of the construction company; that in the emergency the receiver applied to the court in which the foreclosure suit was pending and obtained leave to intervene, and then interposed technical defences for the purpose of gaining delay; that during such delay, to reconcile all interests and gain the active assistance, good will and co-operation of the stockholders of the construction company by securing for them the probability of a partial payment for their stock, he, in June, 1885, called a meeting of the larger creditors of the construction company, and represented to them the situation of affairs and the advantage which would ensue from a compromise of their claims to an amount which would admit of a dividend out of the assets to the stockholders; that the result of such overture was that practically all the creditors agreed to accept one-half of their claims in full satisfaction of them; that later, in July of the same year, the banking-house of Drexel, Morgan & Company, of New York city, proposed to the holders of the first mortgage bonds of the railway company a scheme by which, upon a sale of the railway to the New York Central and Hudson River Railroad Company, fifty cents upon the dollar of their holdings would be paid; that the receiver of the construction

company became a party in the negotiation which followed this proposal, and, with the co-operation of both creditors and stockholders of that company, effected a sale of the assets in his hands for $6,000,000 par value of first mortgage bonds of the then newly-organized West Shore Railroad Company, which bonds were guaranteed by the New York Central and Hudson River Railroad Company and sold for a fraction less than par, and he was enabled, from the proceeds of his sale of those bonds, to pay the creditors of the construction company the full amount they had agreed to accept in satisfaction of their claims, and also pay the stockholders upwards of thirty-one per cent. of the par value of their stock; that, among other stockholders, he paid the firm of Arnold Leo & Company thirty-one per cent. of the par value of their six hundred shares of stock, to wit, $18,600, and that in absence of the compromise with the creditors, Arnold Leo & Company would not have been paid five per cent., to wit, $3,000, on their stock.

It further is made to appear that after Arnold Leo & Company had been paid this dividend upon their stock, and the assets in the receiver's hands had been so far distributed that he retained only sufficient moneys to answer some unsettled contingent liabilities, they sold their interest in the stock standing in their name, and thereafter, when the receiver had adjusted those contingent liabilities and was about to make final distribution of what remained in his hands, and not till then, Mr. Leo, who had slept upon his claim for more than eight years, made the present application.

The claim itself now appears to rest upon this state of facts: It became necessary for the construction company, in order to prosecute its contract to build the New York, West Shore and Buffalo Railway Company's road, to sell securities with which the railway company paid it, and, to accomplish such sale, it opened a subscription agreement which bound the subscribers to pay the construction company par and accrued interest for the amounts of the bonds set opposite their respective names, upon the following, among other, terms and conditions:

Leo *v.* Green.

"*Second.* Ten per cent. shall be paid upon call to C. F. Woerishoffer, treasurer of the North River Construction Company, for which installment receipts, in due form, shall be given, and thereafter not more than ten per cent. shall be called at any one time. At least ten days' notice shall be given of any call, subsequent to the first call. Default in the payment of any installment called, as herein provided, shall entitle the company, at its option, to forfeit the subscription and all installments previously paid.

"*Third.* Each subscriber, upon the payment of the entire amount subscribed by him, shall, in addition to the bonds, be entitled to fifty per cent. of the par value of his subscription in certificates representing the full-paid capital stock of said railway company.

"*Fifth.* After forty per cent. has been called in and paid, such subscriber may elect to surrender all his installment receipts, except one, and receive therefor thirty per cent. in said bonds, and he shall be entitled to receive bonds for each subsequent payment, upon the surrender of the installment receipts, and upon payment in full of his subscription he shall be entitled to the certificates provided for under section third.

"*Sixth.* The bonds subscribed for, under this agreement, will be deposited with the United States Trust Company for delivery to the subscribers hereto, under the terms hereinabove named, upon a surrender of their installment receipts. Interest at five per cent. per annum will be allowed on all installments paid, and will be adjusted as the bonds are delivered."

The firm of Woerishoffer & Company, of which Charles F. Woerishoffer, the treasurer of the construction company, was a member, became a subscriber for $2,000,000 of the bonds, and with that firm Mr. Leo agreed that he would buy $125,000 of the bonds they were to have, to be paid for upon their calls of ten per cent., as provided in the subscription agreement. In pursuance of his agreement, on the 1st of July, 1881, he paid Woerishoffer & Company $12,500, the first ten per cent. called for, and they delivered to him four receipts, which the construction company had given to them, one for $500, two for $1,000 each and one for $10,000, numbered respectively 310, 341, 342 and 420, each of which was endorsed " Woerishoffer & Co.," and, except in amounts and numbers, was identical with the others, in this language :

"No. 310.           THE NORTH RIVER CONSTRUCTION COMPANY,
"20 Nassau Street, Room 9,
"NEW YORK, July 1, 1881.

" Received of Woerishoffer & Co. Five hundred Dollars, being payment of first installment of 10 per cent. due July 1st, 1881, on $5000 of 5 per cent.

Leo *v.* Green.

mortgage gold bonds, due in 1931, of the New York, West Shore and Buffalo Railway Company, subscribed for by them, as per subscription agreement dated June, 1881.

"Interest will be allowed hereon, at the rate of five per cent. per annum, from date hereof to day of issue of bonds.

"This receipt must be surrendered to the Construction Company previous to delivery of the bonds.

"$500.                                J. E. WORCESTER,
                                       "*Assistant Treasurer*
                                       "*North River Construction Company.*"


Mr. Leo thereafter failed to respond to calls made upon him by Woerishoffer & Company for additional payments, and Woerishoffer & Company, in turn, failed to respond to calls upon them by the construction company for the portion of their subscription which the receipts they delivered to Mr. Leo represented, and the construction company thereupon proceeded to forfeit that part of the subscription of Woerishoffer & Company. Mr. Leo does not pretend to have dealt with the construction company and does not show that the construction company had any knowledge of his dealings with Woerishoffer & Company. His transaction, as he states it in his petition and affidavit, was with Woerishoffer & Company alone, concerning a portion of the bonds which that firm had engaged to buy from the construction company. He states that he knew nothing of the terms of the agreement of bond subscription between Woerishoffer & Company and the construction company. If it were material that he should be held to knowledge of that agreement, the receipts which Woerishoffer & Company delivered to him appear to have distinctly notified him of its existence and to have put him upon inquiry concerning it. His $12,500 was paid to Woerishoffer & Company, and the terms in which the receipts are couched show that the money of Woerishoffer & Company went to the construction company. Mr. Leo did not pay any money to the construction company. It is true, Charles F. Woerishoffer was the treasurer of the construction company, but I fail to perceive that that fact changes the situation. Mr. Leo distinctly states that his purpose was to buy from Woerishoffer & Company a portion of the bonds subscribed for by them. His dealing with them, acceptance of receipts

made out to them and complete ignorance of the construction company's subscription agreement, make it plain that he had no purpose to contract with the construction company. Nor does he appear to have confused Charles F. Woerishoffer, treasurer, with Woerishoffer & Company. He appears to have fully comprehended the bargain that he made and the precise situation of the contracting parties. In view of this condition of affairs, it is not surprising that Mr. Leo failed to apprise the receiver of the particulars of his claim at its presentation, but chose rather to generalize it as money paid and advanced.

The mere statement of the facts which underlie this application must determine it.

It is apparent, at a glance, that the claim is without validity. No contractual relation whatever existed between Mr. Leo and the construction company. The construction company did not have his money. His dealings were wholly with Woerishoffer & Company and his payment was to that firm.

But if Mr. Leo's claim possessed merit, I am of opinion that his pertinacious disregard of the chancellor's orders and the receiver's notices has worked a forfeiture of all right to the court's indulgence. It would establish a pernicious and troublesome precedent in the administration of the affairs of insolvent corporations, to grant his application. This is not the case of a creditor who, for want of actual notice or through misapprehension, has lost the opportunity to present his claim, and comes, before final distribution, and asks for relief from the bar of the court's order, but the case of one whose attention has been repeatedly called to his right and duty, and who, with careless indifference or designed deliberation, has ignored every effort of the court and its proper officer to induce him to establish his claim. It is the case of one who has withheld his claim under circumstances which engender suspicion that he had a purpose to gain some advantage in so doing. I am not unmindful that Mr. Leo attributes his tardy application to the neglect of a former attorney. Such a defence will not serve him. He is responsible for his attorney's negligence (*Wakeman* v. *Duchess of Rutland, 3 Ves. 233; Dillett* v. *Kemble, 10 C. E. Gr. 66;*

*Mott* v. *Shreve, 10 C. E. Gr. 438)*; and, if that were not so, I think the mere fact that he, an intelligent principal, has suffered his attorney to delay the prosecution of a claim for $12,500 and interest, for eight years, is enough to conclusively establish his own culpable negligence.

I will deny the application, with costs.